UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

UNITED STATES OF AMERICA

v.

JUSTIN BLAKE,

                Defendant.

------------------------------------------------------------

**MEMORANDUM & ORDER**
16-CR-194 (MKB)

MARGO K. BRODIE, United States District Judge:

    Defendant Justin Blake is charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 3351 *et seq*. (Indictment 1, Docket Entry No. 7.) Blake now moves to suppress the firearm recovered from his person, arguing that it was the result of an unlawful search and seizure. (Def. Mot. to Suppress ("Def. Mot."), Docket Entry No. 12-1.) The Court held a suppression hearing on the motion on December 14, 2016. For the reasons discussed below, the Court denies the motion.

### I. Background

#### a. Criminal complaint and indictment

    At approximately 1:20 AM on November 20, 2015, three officers from the New York Police Department's ("NYPD") City-wide Anti-Crime Unit were on patrol near the Marcus Garvey Housing Development in Brooklyn, New York. (Compl. ¶ 2, Docket Entry No. 1.) The officers observed a group of people conversing in front of an apartment building and decided to investigate the nature of their activities. (*Id.* ¶ 3.) The officers entered the building through the rear entrance, proceeded through the lobby, and approached the front of the building. (*Id.*) While the officers were exiting the front of the building, they observed Blake make "furtive movements in the vicinity of the waistband of his sweatpants [and] appear to shift an object to

the groin area of his pants." (*Id.* ¶ 4.) Based on their training and experience, the officers believed that Blake had a firearm and was attempting to conceal it. (*Id.*) The officers then approached Blake and searched his sweatpants, recovering a thirty-two caliber handgun. (*Id.* ¶ 5.)

After taking Blake into custody, his criminal history revealed that he had a prior felony conviction. (*Id.* ¶ 7.) Blake was indicted for being a felon in possession of a firearm. (Indictment 1.)

### b. Blake's motion to suppress

Blake moves to suppress the recovered firearm on the grounds that the officers lacked probable cause and reasonable suspicion for the search. (Def. Mot. 2–9.) Blake argues that the officers' justifications for the search are "vague, inchoate and unparticularized [sic] and fail to come close to articulating . . . a reasonable suspicion . . . let alone probable cause." (*Id.* at 4.) Blake contends that the search was unlawful because: (1) the officers' "furtive[-]movements" observation is insufficient for reasonable suspicion because it is conclusory; (2) any shifting motion was not probative of criminality; and (3) the officers may not bolster the vagueness of the aforementioned observations by stating that, based on their training and experience, Blake's actions are consistent with the actions of someone possessing and attempting to conceal a firearm. (*Id.* at 4–7.) In addition, Blake contends that he "did not shift an object to the groin area of [his] pants, make any unusual or noticeable or so-called furtive movement in the vicinity of the waistband of [his] pants, or otherwise make so-called furtive movements." (Decl. of Justin Blake ("Blake Aff.") 1, Docket Entry No. 12-2.)

### c. Government's response to the motion

The Government responds that, based on the totality of the circumstances, the officers had reasonable suspicion for the search. (Gov't Opp'n to Def. Mot. ("Gov't Opp'n") 3–4,

Docket Entry No. 13.) The Government argues that the search was justified because Blake was congregating with a group of individuals after 1:00 AM in a high-crime area and he moved an object from the side of his waist to the groin area of his sweatpants. (*Id.* at 3.)

### d. Suppression motion and hearing

The Court held a suppression hearing on the motion on December 14, 2016. (Tr. of Suppression Hr'g ("Tr.") 1, dated Dec. 14, 2016.) The Court received exhibits and heard testimony from Officer Brandon Ravelo, who was the arresting officer, Officer Peter Lazare, and Blake's brother Emmanuel Blake. (Tr. 6:1–131:21.)

Officer Ravelo testified that on November 20, 2015, at approximately 1:15 AM, he was on patrol in an unmarked police vehicle near the Marcus Garvey Housing Development with Officer Lazare and Officer Rodriquez when they observed a large group gathered in front of one of the Development's buildings. (Tr. 8:1–9:9.) The officers decided to approach the group because they were loud and boisterous and it was after 1:00 AM in a high-crime area. (*Id.* at 9:10–10:23.) The officers covertly entered through the building's rear entrance. (*Id.* at 10:24–11:2.) The officers then proceeded through the lobby toward the front entrance, approaching the group from behind. (*Id.* at 11:3–24.) As the officers exited the building, Blake started to walk away from the group and then shifted something from the side of his waist to his groin area. (*Id.* at 12:2–13:15, 18:10–12, 66:1–9.) After noticing Blake's actions, Officer Ravelo approached Blake because he suspected that Blake possessed a firearm. (*Id.* at 13:16–14:6, 16:8–17.) Officer Ravelo ordered Blake to stop walking and to turn around. (*Id.*) Blake complied. (*Id.* at 16:18–21.) When Blake turned around, Officer Ravelo noticed an "L-shaped" object in the groin area of Blake's fitted sweatpants. (*Id.* at 16:22–25; 67:18–68:3.) Based on those observations, Officer Ravelo believed Blake had a firearm, grabbed Blake's hands, and then silently alerted

3

Officer Rodriquez to search Blake's sweatpants. (*Id.* at 17:1–24.) The search revealed that Blake was carrying a thirty-two caliber handgun.[1] (*Id.* at 19:23–20:4, 20:10–21:5.)

Emmanuel testified that he was with Blake for most of the day on November 19, 2015, and never observed or was otherwise made aware that Blake had a firearm on his person. (*Id.* at 75:1–2, 76:7–77:25.) Later in the evening on November 19, 2015 and into the morning of November 20, 2015, he and Blake were speaking with a few friends in front of a building in the Marcus Garvey Housing Development. (*Id.* at 78:4–22, 86:13–24.) They were not overly loud and were not causing any trouble. (*Id.* at 81:12–15.) When the officers appeared from the front entrance of the building, Officer Lazare had a conversation with Emmanuel. (*Id.* at 81:24–82:11.) Emmanuel was familiar with Officer Lazare because he routinely patrolled the Marcus Garvey Housing Development. (*Id.*) After the officers exited the building, Officers Ravelo and Rodriquez approached Blake. (*Id.* at 83:5–12.) Officer Ravelo then ordered Blake to stop and to turn around. (*Id.* at 83:13–14.) Blake complied and placed his hands in the air. (*Id.*) Thereafter, Officer Rodriquez approached Blake and searched him. (*Id.* at 84:5–8.) Because Emmanuel was conversing with Officer Lazare, he did not know whether Blake had moved an object from the side of his waist to the groin area of his sweatpants. (*Id.* at 88:12–89:5.)

A photograph of Blake in the clothing that he had worn on the day of the incident was admitted into evidence. (*Id.* at 21:19–22:6.) In addition, during the hearing, Blake changed into the clothes that he was wearing on the morning of the search. (*Id.* at 100:5–101:19.) Officer Ravelo confirmed that the clothes were the same clothes Blake was wearing when he was

---

[1] Officer Lazare testified regarding his experience as a police officer and prior experience investigating crimes and arresting individuals in the Marcus Garvey Housing Development. (Tr. of Suppression Hr'g ("Tr.") 72:1–74:18, dated Dec. 14, 2016.) Officer Lazare's testimony is not recounted in detail because it is minimally probative to the Court's analysis.

4

searched. (*Id.*) Both Officer Ravelo and Emmanuel testified that Blake's sweatpants were tightly fitted to his body. (*Id.* at 16:22–25; 67:18–68:3, 80:21–24.) The firearm was also admitted into evidence and the Court was able to assess the firearm's size and weight. (*Id.* at 20:7–25, 103:5–13.)

After hearing arguments from the parties, the Court reserved decision on the motion. (*Id.* at 102:5–131:21.)

**II. Discussion**

The Fourth Amendment protects individuals against unreasonable searches and seizures. *United States v. Bailey*, 743 F.3d 322, 331 (2d Cir.), *cert. denied*, 574 U.S. ---, ---, 135 S.Ct. 705, 705 (Dec. 1, 2014)). "Police officers may temporarily detain a person, absent probable cause, in limited circumstances." *Id.* at 332 (citing *Terry v. Ohio*, 392 U.S. 1, 22–25 (1968)); *see also United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016) (holding that the Fourth Amendment allows a police officer to conduct an investigatory detention and subsequent search if the officer has reasonable suspicion to believe that a crime is or has been committed and that the individual is armed and dangerous) (citing *Bailey*, 743 F.3d at 332); *United States v. Singletary*, 798 F.3d 55, 59 (2d Cir. 2015) (holding that "in appropriate circumstances and in an appropriate manner," it is constitutionally permissible "temporarily to detain a person to investigate possible criminality even in the absence of . . . probable cause") (quoting *Bailey*, 743 F.3d at 331–32). Specifically, where a police officer has a reasonable articulable basis to suspect that the individual "is committing or has committed a criminal offense," a temporary investigatory stop may be reasonable under the Fourth Amendment. *Bailey,* 743 F.3d at 336. "To support an

5

accompanying pat down, there must be a reasonable basis to think that the person stopped is armed and dangerous." *Id.* at 332 (quoting *Arizona v. Johnson*, 555 U.S. 323, 326 (2009)).

Reasonable suspicion, like probable cause, is determined objectively based on the information available to the police officers at the time of the stop and not on their subjective state of mind. *United States v. Awan,* 607 F.3d 306, 317 (2d Cir. 2010). While the requisite suspicion "is not a high threshold," *United States v. Lawes*, 292 F.3d 123, 127 (2d Cir. 2002), it is "more than a hunch," and requires "specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting wrongdoing." *Bailey*, 743 F.3d at 336 (internal quotation marks omitted) (first citing *Terry*, 392 U.S. at 21, and then citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)); *see also United States v. Rivera*, 353 F. App'x. 535, 536 (2d Cir. 2009). In determining whether an officer had reasonable suspicion, courts must take into account the "totality of the circumstances" facing the officer. *Arvizu*, 534 U.S. at 273. Reasonable suspicion for a stop and search, however, "is less than probable cause, requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity may be afoot and that the person stopped *may* be armed . . . ." *Bailey*, 743 F.3d at 332 (alteration in original) (internal quotation marks omitted) (citing *Terry*, 392 U.S. at 30).

If an officer lacks reasonable suspicion for an investigatory stop, then any evidence seized after the unlawful stop and search may be suppressed as fruit of the poisonous tree. *See Terry*, 392 U.S. at 15 ("When such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials."); *United States v. Simmons*, 560 F.3d 98, 106–07 (2d Cir. 2009) (noting that any evidence seized after a stop that lacks reasonable suspicion may be suppressed because the evidence collected was the unlawful "fruit of a Fourth

Amendment seizure"); *United States v. Swindle*, 407 F.3d 562, 572 (2d Cir. 2005) (noting that when an initial investigatory stop is unlawful, any subsequent seizures may be "suppressed as fruit of a poisonous tree").

Based on the evidence and testimony presented, the officers had reasonable suspicion to stop Blake, search him, and seize the firearm. Notably, none of the testimony presented at the suppression hearing contradicts the material facts supporting the officers' articulated basis for the stop and search. The only contradictory testimony between Officer Ravelo and Emmanuel was that the group was not loud and that Blake put his hands in the air after Officer Ravelo ordered him to stop and turn around. (*Compare* Tr. 83:13–14 *with* Tr. 16:18–25; 67:18–68:3.) Neither Officer Ravelo's testimony that he observed Blake shift an object from the side of his waist to the groin area of his sweatpants, (*id.* at 12:2–13:15, 18:10–12, 66:1–9), nor his testimony that after approaching Blake, he noticed an L-shaped object in the groin area of Blake's sweatpants, (*id.* at 16:22–25; 67:18–68:3), are contradicted by Emanuel's testimony, (*id.* at 88:12–89:5). Further, the Court observed Blake in the sweatpants he wore when he was searched, (*id.* at 100:5–101:13), and as testified to by Emmanuel and Officer Ravelo, (*id.* at 16:22–25; 67:18–68:3, 80:21–24), the sweatpants were form-fitting. Although the weapon found on Blake was a relatively small firearm, (*id.* at 20:7–25, 103:5–13), based on the type of sweatpants that Blake was wearing, (*id.* at 100:5–101:13), and the size and weight of the firearm, (*id.* at 20:7–25, 103:5–13), the Court credits Officer Ravelo's testimony that he observed the shape of the firearm while it was in Blake's sweatpants.

Under the totality of the circumstances, the Court finds that the officers had reasonable suspicion to stop Blake and subsequently search him for the presence of a firearm. Blake was in a high-crime area with a group of individuals after 1:00 AM; Officer Ravelo observed him shift

an object from the side of his waist to the groin area of his sweatpants; Officer Ravelo noticed an L-shaped object in the groin area of Blake's sweatpants; and, based on Officer Ravelo's training and experience, he believed Blake had a firearm. Officer Ravelo's observation is credible due to the form-fitting nature of Blake's sweatpants as well as the size and weight of the firearm. The Second Circuit has held that each of Officer's Ravelo's observations may be considered by a court in determining whether, under the totality of the circumstances, an officer had articulated reasonable bases supporting an investigatory stop and search. *See United States v. Padilla*, 548 F.3d 179, 188 (2d Cir. 2008) ("The high-crime nature of the neighborhood was properly among the relevant contextual considerations in [the officer's] assessment of the situation." (internal quotation marks omitted) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000))); *United States v. Sanders*, 208 F.3d 204, 204 (2d Cir. 2000) (holding that an officer had reasonable suspicion, where he "saw [the defendant] place or adjust an object in his waistband and pull his shirt down over his waistband to cover the object"); *United States v. Muhammad*, 463 F.3d 115, 121 (2d Cir. 2006) (affirming that an officer had reasonable suspicion for a search and holding that an officer "may draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person" (alteration in original) (internal quotation marks omitted) (citing *Arvizu*, 534 U.S. at 273)); *United States v. Lucas*, 68 F. App'x 265, 266–67 (2d Cir. 2003) ("The officer's personal observation of an object that appeared to be a gun created adequate reasonable suspicion to believe that [the defendant] was unlawfully possessing a firearm, and justified conducting a limited weapons search . . . ."). Therefore, under the totality of the circumstances, Officer Ravelo had reasonable suspicion to stop Blake because he believed he possessed a firearm and he had reasonable suspicion to search him for the presence of the firearm. *See*

*Bailey*, 743 F.3d at 333 (holding that "Bailey's initial stop and patdown were supported by multiple articulable facts giving rise to a reasonable suspicion that he had been and was then engaged in criminal activity and might be armed"). Accordingly, the Court denies Blake's motion to suppress.

### III. Conclusion

For the foregoing reasons, the Court denies Blake's motion to suppress.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: February 15, 2017
       Brooklyn, New York